OPINION OF THE COURT
Arlene D. Goldberg, J.
These two dockets have been consolidated by the court for decision on defendant’s omnibus motions in which he seeks identical forms of pretrial relief.
Each of the underlying accusatory instruments charges the defendant with being an unlicensed general vendor (Administrative Code of City of NY § 20.453) and with trademark counterfeiting in the third degree (Penal Law § 165.71).*
In substance, it is alleged that at around midday on two separate dates (Aug. 20, 1993 and Nov. 14, 1993), defendant displayed and offered for sale watches, bearing counterfeit trademarks, on street corners in midtown Manhattan.
Proof that defendant was not licensed as a general vendor on either date comes from the supporting depositions of the *502 observing police officers. In relevant part, each states as follows: "At the time of my observations, defendant was not displaying a license issued by the Department of Consumer Affairs and could not produce one when asked. Moreover, I have examined a current, official list of vendors licensed by the Department of Consumer Affairs, and defendant’s name does not appear on that list.”
For purposes of corroborating the officers’ allegations regarding the defendant’s licensing status, a supporting deposition has been filed in each case from a Special Representative of the Department of Consumer Affairs. Both representatives attest to being fully familiar with the record-keeping practices of the Department’s licensing issuance division. They further state that they are authorized to access and report on the contents of the division’s official records. In the final paragraph of their respective depositions, each representative indicates that she made a diligent search of the Department’s license records, which are made and maintained in the regular course of the Department’s business, and found that defendant did not have a general vendor’s license on the date of the alleged offense.
i
Defendant, citing People v Ebramha (157 Misc 2d 217 [Crim Ct, NY County 1992]), argues that these supporting depositions are insufficient to convert the complaints into informations because they do not contain an official, certifying seal as required by CPLR 4521.
This court respectfully declines to follow People v Ebramha (supra; see generally, Alexander, 1993 Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 4521, 1994 Pocket Part, at 12) and specifically finds that the supporting depositions recite evidence that would be admissible at trial pursuant to the common-law exception to the hearsay rule. Accordingly, the accusatory instruments have been properly converted.
ii
Defendant has moved to dismiss the counts of trademark counterfeiting in the third degree for facial insufficiency. Specifically, defendant contends that the factual allegations fail to establish that he acted with either of the alternative mental states required by the statute.
*503 Penal Law § 165.71 reads as follows: "A person is guilty of trademark counterfeiting in the third degree when, with the intent to deceive or defraud some other person or with the intent to evade a lawful restriction on the sale, resale, offering for sale, or distribution of goods, he or she manufactures, distributes, sells, or offers for sale goods which bear a counterfeit trademark, or possesses a trademark knowing it to be counterfeit for the purpose of affixing it to any goods.”
In order for an information to be sufficient on its face, the nonhearsay allegations of the factual part of the information and/or of any supporting depositions which may accompany it, must establish, if true, every element of the offense charged and defendant’s commission thereof. (See, CPL 100.40 [1] [c].) An information which fails to meet this prima facie case requirement is jurisdictionally defective and must be dismissed. (See, People v Alejandro, 70 NY2d 133 [1987].)
The nonhearsay allegations which give rise to the charge of trademark counterfeiting on docket No. 93N074444 are contained in the form supporting deposition completed by Kevin Doughterty, who identifies himself as a trademark representative with Harper Associates. It reads as follows: "I have examined the merchandise — costume watches (described merchandise) — that was seized from the above-named defendant [balla niang] on 8-20-93 (date) by Police Officer Rogers, and I am confident that the merchandise bears a counterfeit trademark, to wit, an imitation of a trademark for Rolex Watch. My basis for this conclusion is the training that I obtained from the company that holds the genuine trademark. Specifically (describe basis for knowing goods bear a counterfeit trademark): the watches bear a false trademark in addition it is of poor quality and is not manufactured by the Trademark owner or by an authorized representative].)”
Sergeant Hernandez, who filed an identical form supporting deposition on docket No. 93N000520, makes virtually the same claims with respect to the watches that were seized from the defendant on November 14, 1993 by Police Officer DeNoia. Although Sergeant Hernandez has disavowed the title of Trademark Representative by drawing a line through it, he states that, "the product displays poor quality and does not have the characteristics of an original rolex watch.”
In these cases, the purported absence of nonhearsay allegations which establish that defendant acted with the intent to deceive or defraud is irrelevant since the accusatory portions *504 of the instruments reflect that the sole culpable mental state alleged in both prosecutions is the intent to evade the lawful restriction on the sale of goods.
Defendant’s contention that the factual allegations fail to establish this intent is without merit. Through the supporting depositions that have been filed in these matters, the People have made a sufficient nonhearsay showing that defendant was offering to sell watches bearing an imitation of a Rolex trademark. That defendant had knowledge that these were not genuine Rolex watches may be inferred from his possession and the inferior quality of the goods.
Clearly, a person who knowingly offers to sell items bearing a counterfeit trademark evinces the intent to evade the lawful restriction on the sale of goods which is created through trademark ownership. However, since the factual allegations fail to establish that the trademarks portrayed constitute counterfeit trademarks within the meaning of the statute, defendant’s motions to dismiss for facial insufficiency must be granted.
Penal Law § 165.70 provides the definitions for the terms used in the statute. It states, in relevant part, as follows:
"1. The term 'trademark’ means any word, name, symbol, or device, or any combination thereof adopted and used by a person to identify goods made by a person and which distinguish them from those manufactured or sold by others which is in use and which is registered, filed or recorded under the laws of this state or of any other state or is registered in the principal register of the United States patent and trademark office.
"2. The term 'counterfeit trademark’ means a spurious trademark or an imitation of a trademark that is:
"(a) Used in connection with trafficking in goods; and
"(b) Used in connection with the sale, offering for sale or distribution of goods that are identical with or substantially indistinguishable fróm a trademark as defined in subdivision one of this section. ” (Emphasis supplied.)
It is apparent from the statutory definitions that a prima facie case of trademark counterfeiting cannot be established in the absence of proof that the offending mark was identical with or substantially indistinguishable from a trademark which is in use and registered, recorded or filed.
That these are elements which must be pleaded and proved is perhaps best illustrated by reviewing the contents of the *505 indictment brought in United States v Torkington (812 F2d 1347, 1349, n 1 [11th Cir 1987]) for a violation of the Federal Trademark Counterfeiting Act. (18 USC § 2320.) In relevant part, the Federal statute punishes "[w]hoever intentionally traffics * * * in goods * * * and knowingly uses a counterfeit mark on or in connection with such goods.” 18 USC § 2320 (d) (1) (A) defines a "counterfeit mark” as "a spurious mark—
"(i) that is used in connection with trafficking in goods or services;
"(ii) that is identical with, or substantially indistinguishable from, a mark registered for those goods or services on the principal register in the United States Patent and Trademark Office and in use * * * and
"(iii) the use of which is likely to cause confusion, to cause mistake, or to deceive.” (Emphasis supplied.)
The indictment in Torkington (supra) was found to allege all the elements of the crime of trafficking in counterfeit goods. (United States v Torkington, supra, at 1354.) Notably, the indictment included the allegations: that "the defendant did intentionally traffic and attempt to traffic in watches bearing what he knew to be counterfeit marks that were identical with, and substantially indistinguishable from, marks registered for Rolex Watch U.S.A., Inc., and Montres Rolex S.A. on the principal register in the United States Patent and Trademark offices, which marks were then in use by Rolex Watch U.S.A., Inc. and Montres Rolex S.A.”
In United States v Infurnari (647 F Supp 57, 58 [WD NY 1986]), which also involved a prosecution under the Federal Trademark Counterfeiting Act, the court stated that: " 'Counterfeit [trade]mark’ has a technical definition under the statute; a mark must meet the listed criteria to fall within the definition.”
The accusatory instruments in these cases are completely devoid of factual allegations which establish that the offending mark portrayed on the watches defendant was offering for sale meet the statutory criteria of a counterfeit trademark.
Accordingly, the count of trademark counterfeiting in the third degree is dismissed on both dockets.
in
Defendant’s motion for a hearing under Penal Law § 165.74 is essentially moot in light of the dismissal of the trademark *506 counterfeiting counts. However, since the People may elect to secure a superseding information, the court will decide the issue at this time.
Penal Law § 165.74 provides as follows: "Any goods manufactured, sold, offered for sale, distributed or produced in violation of this article may be seized by any police officer, who must deliver the same to the magistrate before whom the person arrested is required to be taken. The magistrate must, upon arraignment of the defendant, determine whether the goods had been manufactured, sold, offered for sale, distributed or produced in violation of this article, and upon a finding that the goods had been manufactured, sold, offered for sale, distributed, or produced in violation of this article, shall cause such articles to be delivered to the district attorney of the county in which the defendant is liable to indictment or trial. Upon conviction of the defendant, the district attorney must cause to be destroyed the articles in respect whereof the defendant stands convicted, and which remain in the possession and control of the district attorney. Destruction shall not include auction, sale or distribution of the items in their original form.”
Defendant’s motion for a hearing is denied. The safeguards of this statute are designed to apply to seizures made solely on the basis that the goods are counterfeit. In these cases, the watches were seized incident to defendant’s arrest for unlicensed general vending. As evidence and instrumentalities of that crime, the watches are lawfully in the State’s custody even if they are not counterfeit. Accordingly, a judicial pretrial determination as to whether these watches constitute counterfeit goods within the meaning of the statute is not required in this case.
IV
Defendant’s requests for Mapp hearings are denied. The defendant’s motions do not address the complaints’ allegations that prior to arrest, defendant was seen displaying watches in open briefcases to passersby and in one case (docket No. 93N074444), additionally quoted a price to the arresting officer. (See, People v Mendoza, 82 NY2d 415 [1993].)
v
The People’s responses to defendant’s motions for a bill of particulars and discovery are presumed adequate absent an *507 application by counsel made prior to the date set for trial after conference between the attorneys. The People are reminded of their continuing obligation under Brady v Maryland (373 US 83).
VI
The Sandoval motion is referred to the trial court.
VII
Defendant’s request to make further motions is granted to the extent recognized in CPL 255.20 (3).
The People’s requests for reciprocal discovery are granted.

 Each of the accusatory instruments misnames the offense under Penal Law § 165.71 as the sale of counterfeit goods. The additional charges of resisting arrest on docket No. 93N074444 and violating Tax Law § 1817 (d) (1) on docket No. 93N000520 have been dismissed on the People’s motion.