OPINION OF THE COURT
Charles A. Posner, J.
Defendants move to dismiss the information charging the defendants with trademark counterfeiting in the third degree (Penal Law § 165.71), failure to disclose the origin of a recording in the second degree (Penal Law § 275.35), and criminal possession of a forged instrument in the third degree (Penal Law § 170.20) on the ground that the information is defective (CPL 170.35 [1] [a]). Specifically, defendants argue that the information is insufficient on its face (CPL 100.40 [1]).
The factual part of the information states in part:
"Deponent * * * observed defendants, Babón Cisse and Dusmane Cisse, standing on the sidewalk with an array of videotapes for sale on a table in front of them, with additional videotapes in a box underneath the table. Deponent further states that defendants had a total of 143 videotapes in their possession and said titles included: Free Willy Two, produced by Warner Brother [sic]; Sleeping Beauty, produced by Disney; Miracle on 34th Street, produced by Fox; Power Rangers, produced by Fox; Gordy, produced by Disney; [Apollo] 13, produced by MCA.
"Deponent further states that he is informed by Pedro Hernandez, that he has been employed for five years as an investigator, U.S. anti-piracy operation, for the Motion Picture Association of America, Inc., and that the Motion Picture Association of America, Inc. is the agent of the above mentioned movie producers.
*187 "Deponent is further informed by Pedro Hernandez that he has examined each of the 143 above mentioned videotapes and has determined that they are counterfeit. Deponent is further informed by Investigator Hernandez that his conclusion that the videotapes are counterfeit is based on the fact that [there] is no heat stamp on the door of the videotapes, no laser printing on the spine of the videotapes, no security labels, the erasure tabs are still intact and the videotapes have imperfect move sleeves.
"Deponent is further informed by Investigator Hernandez that the current retail value of the above videotapes, would be 55.00 U.S. currency each and that the current value of the recorded videotapes is in excess of $1000.00 U.S. currency.
"Deponent is further informed by investigator Hernandez that defendants have no permission or authority to possess said videotapes.”
As stated before, the first count is trademark counterfeiting in the third degree (Penal Law § 165.71). A person is guilty of trademark counterfeiting in the third degree when, with the intent to deceive or defraud some other person or with the intent to evade a lawful restriction on the sale, resale, offering for sale, or distribution of goods, he or she manufactures, distributes, sells, or offers for sale goods which bear a counterfeit trademark, or possesses a trademark knowing it to be counterfeit for the purpose of affixing it to any goods.
An essential element of this count is that the goods bear a counterfeit trademark. A trademark is "any word, name, symbol, or device, or any combination thereof adopted and used by a person to identify goods made by a person and which distinguish them from those manufactured or sold by others which is in use and which is registered, filed or recorded under the laws of this state or of any other state or is registered in the principal register of the United States patent and trademark office” (Penal Law § 165.70 [1] [a]). A counterfeit trademark is "a spurious trademark or an imitation of a trademark that is” "used in connection with trafficking in goods; and” "used in connection with the sale, offering for sale or distribution of goods that are identical with or substantially indistinguishable from a trademark as defined in subdivision one of this section” (Penal Law § 165.70 [2]). Absent from the instant information is any naming or describing of any trademark. Equally absent from the factual part is any statement from the owner of the trademark that the videotapes contained any word, name, symbol or device that was registered *188 as its trademark under State or Federal law. Accordingly, the first count is dismissed as defective. The People have leave to, for example, provide a supporting deposition containing the absent facts and then move to add the now dismissed count to the accusatory part of the information pursuant to CPL 100.45 (3).
The second count is failure to disclose the origin of a recording in the second degree (Penal Law § 275.35). "A person is guilty of failure to disclose the origin of a recording in the second degree when, for commercial advantage or private financial gain, he knowingly advertises or offers for sale, resale, or rental, or sells, resells, or rents, or possesses for such purposes, a recording the cover, box, jacket or label [of which] does not clearly and conspicuously disclose the actual name and address of the manufacturer or the name of the performer or principal artist” (Penal Law § 275.35).
In People v Sylla (154 Misc 2d 112 [Crim Ct, NY County 1992]) and People v Abdul (157 Misc 2d 511 [Crim Ct, NY County 1993]), the court found the factual allegations sufficient as to the offering for sale where defendants were displaying numerous costume watches, the kind of item that a person would normally only wear or carry one of if it were for personal use. In People v Diouf (153 Misc 2d 887 [Crim Ct, NY County 1992]), however, where one of the defendants had some cassettes spread out on a milk crate, the court found the allegations facially insufficient because they were the type of item a person would likely own more than one of, and therefore the cassettes could have been from the defendant’s personal use. The court found that the mere presence of multiple cassettes on a milk crate, without more, was insufficient to make out the element of an offer for sale (see, People v Diouf, supra, at 890). In People v Burke (NYLJ, Apr. 11, 1994, at 31, col 5 [Sup Ct, Bronx County]) the defendant was alleged to have had "an assortment” of videotapes displaced on a tabletop behind which he was standing. Absent from the factual allegations was that the defendant approached any passerby or quoted any prices, nor was any information provided as to the nature of the location nor as to how long the defendant was observed prior to his arrest. The Burke court concluded that "[videotapes, like cassette tapes, are the type of item a person might well possess many of for his own personal use. The reference to an 'assortment’ connotes a variety of videotapes of differing titles or contents, but not necessarily multiple copies of the same title. If the complaint had explicitly stated that multiple copies of *189 the same videotape were observed this would have been a factual allegation supporting the element of an offer for sale, as an individual would normally only have one copy of each film for his personal use. However, the allegation of an 'assortment’ of videotapes is equivocal, and could denote no more than four or five videotapes of differing titles situated on top of a table. Accordingly, the court cannot conclude from the term 'assortment’ alone, that the defendant was displaying numerous copies of the same videotapes, even if this might have been the case. Other additional facts which might have been included in this accusatory instrument to support the element of an offer for sale, include but are not limited to: the actual number of videotapes on the table, the manner in which they were 'displayed’ (e.g. were they all merely in a stack or pile, or were they carefully laid out so that each title and tape cover could easily be viewed by passersby), whether the defendant was observed removing additional videotapes from a bag, car or van, to fill in missing titles from his display, whether he spoke to passersby or appeared to be looking up and down the street for potential customers, whether the table was set up at a busy commercial intersection, etc. No such facts, however, appear in the accusatory instrument” (People v Burke, supra, at 32, col 1).
This court, however, finds the display and storage under the display of 143 videotapes is enough to support for pleading purposes that the defendant offered those videotapes for sale. In this day and age of personal cassette players (currently known as Walkmans™) it may be reasonable to argue that the mere possession of audio cassettes is not enough to support an offer to sell. However, video cassettes are different. While one could possess both audio cassettes and videotapes for personal use and in this day and age of inexpensive video cassettes it is not impossible to own and possess 143 video cassettes, what purpose would it be to display video cassettes on the street other than to offer them for sale? This answer is best left to the trier of fact in the trial. While I recognize that the Burke court’s approach in providing great detail in an information might be the better approach in the long run, for this particular case, there are enough facts based on the circumstances to support this count for pleading purposes under CPL 100.40. Second, contrary to the Burke court, offering to sell does not require that a sale actually take place. Again, the statute requires an "offers for sale, resale, or rental, or sells, resells, or rents, or possesses for such purposes” — the statute itself distin *190 guishes between the offering and the completion of a sale (Penal Law § 275.35). Accordingly, this court does not follow the holding in cases such as People, v Burke (supra), and instead finds this count to be sufficient for pleading purposes.
The final count is criminal possession, of a forged instrument in the third degree (Penal Law § 170.20). A person is guilty of criminal possession of a forged instrument when that person "with knowledge that it is forged and with intent to defraud, deceive or injure another, he [or she] utters or possesses a forged instrument”. (Penal Law § 170.20.) "Forged instrument” means a written instrument which has been falsely made, completed or altered (Penal Law § 170.00 [7]). "Written instrument” means any instrument or article, including computer data or a computer program, containing written or printed matter or the equivalent thereof, used for the purpose of reciting, embodying, conveying or recording information, or constituting a symbol or evidence of value, right, privilege or identification, which is capable of being used to the advantage or disadvantage of some person (Penal Law § 170.00 [1]). The court finds that a videotape, the subject matter of the criminal case, is not something that contains the type of "written or printed matter or the equivalent” that the statute seeks to protect (Penal Law § 170.00 [1]). Accordingly, the possession count is dismissed.
The People have leave to replead the dismissed first count through use of a sufficient superseding accusatory instrument or a supporting deposition containing the additional facts necessary to make the first count sufficient and then move pursuant to CPL 100.45 (3) to amend the information to add the dismissed trademark count.
Defendant’s motion to dismiss on the ground that the court lacks jurisdiction in that these statutes are preempted by Federal copyright law is denied for reasons set forth in People v Borriello (155 Misc 2d 261 [Sup Ct, Kings County 1992]).
[Portions of opinion omitted for purposes of publication.]